**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CABLE MANAGEMENT SOLUTIONS, INC. d/b/a SNAKE TRAY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MICHAEL DONATO,**<br><br>**Defendant.** | **Case No.:**<br><br>**<u>VERIFIED COMPLAINT</u>**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff **Cable Management Solutions, Inc., doing business as Snake Tray** (hereinafter "Plaintiff" or "Snake Tray"), by its attorneys, **Zabell & Collotta, P.C.**, alleges as follows:

## NATURE OF THE ACTION

1. This action concerns Defendant Michael Donato's (hereinafter "Defendant" or "Donato") substantial acquisition and local centralization of Plaintiff's nonpublic engineering, design, project, customer, pricing, bid, and commercial information during the final days of his employment.
2. Defendant's authorized business access did not permit bulk collection unrelated to his assignments, transfer to personal devices or accounts, post-employment retention, or non-Plaintiff use or disclosure.
3. On July 6, 2026, Microsoft 365 recorded approximately 203 complete-file OneDrive synchronization events involving approximately 203 distinct object URLs and approximately 200 unique filenames within approximately four minutes.

4. Browser evidence identified approximately nineteen completed Chrome downloads between July 6 and July 10, 2026, totaling approximately 2.43 gigabytes.
5. On July 10, 2026, Defendant's final day, the workstation downloaded `_Bid Docs.zip`, approximately 2.14 gigabytes, from a Box-hosted project repository to its local Downloads folder.
6. The material included engineering, design, CAD, customer, project, quotation, bid, drawing, presentation, installation, pricing, lead, meeting, strategy, fulfillment, and other business information.
7. Endpoint evidence shows that `SplashtopSOS.exe`, which can provide remote access and file transfer, executed from Defendant's Downloads folder approximately twenty-one minutes before the concentrated synchronization.
8. The Splashtop SOS execution identifies a potentially relevant mechanism but does not independently establish any Plaintiff file transfer.
9. Plaintiff's forensic examiner found the collective pattern consistent with data staging or collection for removal.
10. Present evidence establishes consistent personal transfer, post-employment retention, disclosure to Affordable Wire Management ("AWM") or another person, and/or post-employment use.
11. Defendant declined to identify relevant devices and accounts, implement documented preservation and quarantine, or consent to a targeted neutral forensic examination.
12. Plaintiff seeks focused preservation, quarantine, nonuse, nondisclosure, verified accounting, neutral targeted forensic inspection, and expedited discovery concerning specifically identified files and information categories.

13. Plaintiff does not seek to prevent Defendant from working for AWM or another employer or competing lawfully using his general knowledge, experience, and skills.

## PARTIES

14. Plaintiff Cable Management Solutions, Inc. is organized under the laws of State of New York, has its principal place of business at 291 Skip Lane, Bay Shore, New York 11706, and does business as Plaintiff.

15. Upon information and belief, Defendant Michael Donato resides in Suffolk County, New York.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over the Defend Trade Secrets Act claim under 18 U.S.C. §§ 1836 and 1839 and 28 U.S.C. §§ 1331 and 1338.

17. This Court has supplemental jurisdiction over the related New York claims under 28 U.S.C. § 1367.

18. Venue is proper under 28 U.S.C. § 1391 because substantial events occurred in this District and Plaintiff's principal place of business is in Bay Shore, New York.

19. This Court has personal jurisdiction over Defendant because he resides within and the acts committed occurred within this District.

## FACTUAL ALLEGATIONS

### I. DONATO'S EMPLOYMENT, DUTIES, AND AUTHORIZED ACCESS

20. Plaintiff offered Defendant employment as a Solar Sales Engineer by letter dated April 16, 2024.

21. Defendant performed project-management and sales functions for Plaintiff's photovoltaic, solar, and battery-energy-storage-system products.

22. His duties included presenting product solutions, assisting with project design and management, and developing new business.

23. Defendant had access to Office 365, Global Shop Solutions, AutoCAD, Adobe, Monday, and all folders on Plaintiff's J and M drives.

24. He could access customer, project, pricing, quotation, bid, and product-drawing information when needed for Plaintiff's business.

25. Plaintiff expected employees to work from internal servers, maintaining shared company documents.

26. Defendant could access and use files reasonably necessary for assigned Plaintiff work.

27. His access did not authorize unrelated bulk synchronization, unauthorized anonymous links, personal transfer, post-employment retention, or non-Plaintiff use or disclosure.

28. Defendant gave notice on June 26, 2026, and his final employment day was July 10, 2026, he refused to identify his subsequent employer when he gave notice.

29. During his final two weeks, he serviced limited customers, made presentations, attended QCells meetings, and debriefed the sales team.

30. That work reasonably required a PowerPoint presentation and project list.

31. No one instructed Defendant to collect or centralize a large body of company files during his departure period.

32. The approximately 200 synchronized files spanned numerous customers and projects, including matters beyond his final assignments and already sold or quoted projects.

33. Plaintiff has identified no final-assignment business reason requiring that bulk collection.

## II. CONFIDENTIALITY NOTICE AND PROTECTED INFORMATION

34. The April 16, 2024 offer letter advised Defendant that Plaintiff possessed confidential information, intellectual property, trade secrets, proprietary data, and other sensitive information.

35. Defendant received Plaintiff's Employee Handbook near his April 29, 2024 start date and signed a retained hard copy.

36. Plaintiff maintains nonpublic technical and commercial information, including product designs, STP, CAD, and DWG files, engineering drawings, manufacturing information, customer information, pricing, quotations, bids, project information, and renewable-energy materials.

37. "Protected Information" means only nonpublic Plaintiff information specifically identified in the confidential schedule, including the separately identified categories below.

a) nonpublic product models, STP, CAD, and DWG files, engineering drawings, and related manufacturing or assembly information;

b) nonpublic customer-specific designs, configurations, project drawings and plans, takeoffs, mounting designs, delivery or installation information, and requirements;

c) nonpublic current pricing, quotations, bids, bid assumptions, and project archives; and

d) nonpublic customer, project, and commercial compilations, including qualifying trade-show lead compilations and customer-meeting materials.

38. The schedule identifies particular files or narrow categories and distinguishes public or externally disclosed information; CSV descriptions alone do not establish content, ownership, secrecy, value, or trade-secret status.

39. Plaintiff does not claim public standard-product materials are protected merely because they appeared among the files.

40. Trade-secret protection is alleged only where reasonable secrecy measures and independent economic value satisfy 18 U.S.C. § 1839.

## III. DEPARTURE-PERIOD DIGITAL ACTIVITY

41. Between approximately 23:28:20 and 23:32:20 UTC on July 6, 2026, Defendant's account generated approximately 203 `FileSyncDownloadedFull` events.

42. The events involved approximately 203 distinct OneDrive object URLs, approximately 200 unique filenames, and public IP address 173.220.88.34.

43. A `FileSyncDownloadedFull` event reflects complete-file synchronization to a computer, materially different from opening or previewing a file.

44. The synchronized material included engineering, design, CAD, commercial, project, contractual, customer, meeting, pricing, lead, strategy, fulfillment, and other business materials.

45. The July 6 synchronization is technically consistent with local acquisition or centralization.

46. Windows evidence recorded execution of `C:\Users\MichaelD\Downloads\SplashtopSOS.exe` approximately twenty-one minutes before synchronization began.

47. Splashtop SOS can facilitate remote access and remote file transfer.

48. Its execution does not independently prove transfer of any Plaintiff's file.

49. On July 7, Microsoft 365 recorded nine additional complete-file synchronizations, twenty-seven accesses, three sharing events, six previews, and one anonymous-link creation.

50. The anonymous-link event involved "Renewable Energy Presentation 2025_v1 2.pptx."

51. An anonymous link can make content accessible by link without an identified company account.

52. Evidence does not identify the recipient or establish that an outside recipient opened that link.

53. Browser evidence identified approximately nineteen completed Chrome downloads from July 6 through July 10 totaling approximately 2.43 gigabytes.

54. Those downloads included CAD, engineering, bid, installation, quotation, drawing, presentation, project, and other business materials.

55. On July 10, the workstation downloaded `_Bid Docs.zip` from a Box-hosted repository to `C:\Users\MichaelD\Downloads\_Bid Docs.zip`.

56. The archive's recorded size was approximately 2.14 gigabytes.

57. Browser, shortcut, and Jump List artifacts independently reflected the archive on the workstation.

58. Defendant did not tell Plaintiff he was bulk synchronizing or collecting company documents.

## IV. FORENSIC ANALYSIS

59. Collectively, the evidence reflects concentrated downloading, synchronization, sharing activity, and local centralization during Defendant's final employment days.

60. Plaintiff's examiner characterizes the pattern consistent with data staging or collection for removal.

61. No sufficiently comparable historical baseline analysis has been completed, and the examiner does not rely on one.

62. Company-side evidence establishes that substantial company and project data was downloaded, synchronized, and locally centralized for removal.

63. It indicates personal transfer, post-employment retention, disclosure to AWM or another person, or post-employment use.

64. OneDrive records establish synchronization to a computer but not subsequent activity outside Microsoft 365.

65. The evidence therefore leaves the files' ultimate destination and post-employment disposition unresolved.

## V. NOTICE, DEMAND, AND LACK OF VERIFIABLE ASSURANCES

66. Plaintiff demanded cessation of access, use, disclosure, transmission, and exploitation; preservation and quarantine; identification of devices, accounts, methods, and recipients; and targeted examination.

67. On August 24, 2026, Defendant denied, through counsel, exploiting, transmitting, or disclosing Plaintiff information, including to AWM, and stated nothing existed to preserve or quarantine.

68. Defendant declined to identify the device associated with IP address 173.220.88.34 and denied knowledge of or identifying access to the anonymous link.

69. He declined preservation or quarantine instructions, suspension of deletion and resets, forensic imaging, and sworn compliance certification.

70. He has not provided independently verifiable assurance concerning copies, derivatives, relevant systems, or preserved forensic artifacts.

71. Array Technologies, Inc. agreed to preserve identified records and quarantine identified confidential Snake Tray material, but its response does not resolve Defendant's conduct.

## FIRST CAUSE OF ACTION
### *MISAPPROPRIATION AND THREATENED MISAPPROPRIATION UNDER THE DEFEND TRADE SECRETS ACT*

72. Plaintiff repeats and realleges paragraphs 1 through 71.

73. Protected Information includes qualifying financial, business, scientific, technical, economic, and engineering information relating to products and services used or intended for use in interstate commerce.

74. For each scheduled trade secret, Plaintiff took reasonable secrecy measures, and the information derives independent economic value from not being generally known or readily ascertainable.

75. Defendant obtained employment access and was authorized to use Protected Information only as reasonably necessary for Snake Tray business.

76. During his final days, Defendant's account and workstation were used for concentrated synchronization, downloading, and centralization across numerous customers and projects beyond his final assignments.

77. The documented staging, unresolved destination, and refusal of verifiable preservation or neutral examination support concern that Protected Information may be retained, disclosed, or used.

78. The claim rests on identified activity and unresolved disposition, not solely on knowledge, new employment, or inevitable disclosure.

79. Defendant's conduct constitutes actual or threatened misappropriation under the Defend Trade Secrets Act.

80. Plaintiff is entitled to injunctive relief, proven monetary relief, an accounting, and all other available relief.

## SECOND CAUSE OF ACTION

***MISAPPROPRIATION AND THREATENED MISAPPROPRIATION OF TRADE SECRETS UNDER NEW YORK STATE LAW***

81. Plaintiff repeats and realleges paragraphs 1 through 80.

82. The scheduled trade secrets are nonpublic technical and commercial information and compilations providing business advantage over competitors who do not know or use them.

83. Plaintiff maintained secrecy measures, and the information reflects development effort and cannot readily be duplicated or lawfully acquired.

84. Defendant obtained access through employment subject to duties of secrecy and business-limited use.

85. Authorized access did not permit excessive collection, external transfer, post-employment retention, or non-Snake Tray use or disclosure.

86. The concentrated collection, unresolved destination, and lack of verifiable preservation or inspection support actual or threatened misappropriation under New York law.

87. Plaintiff does not allege that existing company-side evidence proves completed external transfer, retention, disclosure, or use.

88. Plaintiff is entitled to injunctive relief, proven damages and disgorgement, an accounting, and other available relief.

## THIRD CAUSE OF ACTION
### *BREACH OF DUTY OF LOYALTY UNDER NEW YORK LAW*

89. Plaintiff repeats and realleges paragraphs 1 through 88.

90. During employment, Defendant owed duties of loyalty and fidelity and was required to use Plaintiff's systems and Protected Information only for proper duties.

91. The alleged synchronization, downloading, sharing, and local centralization occurred while Defendant remained employed.

92. On information and belief, Defendant breached his duty by using Snake Tray access, systems, and work time to collect and stage Protected Information for an adverse, unauthorized purpose.

93. This claim concerns employment-period conduct and does not challenge lawful preparation to compete, job changes, general skills, or competition without Protected Information.

94. Plaintiff is entitled to proven compensatory damages and disgorgement, an accounting, equitable relief, and other remedies.

## NEED FOR NARROWLY TAILORED RELIEF

95. Evidence shows substantial concentrated acquisition and local centralization before departure.

96. Continued ordinary use of relevant devices and accounts may overwrite or age out forensic evidence.

97. Defendant's refusal of verifiable preservation, quarantine, and targeted neutral inspection leaves that risk unresolved.

98. A scoped examination could determine whether known files were absent, transferred, deleted, retained, accessed, modified, cloud-synchronized, forwarded, or used with a third party.

99. The examination could also establish that Snake Tray files are absent and no post-employment use occurred.

100. Requested relief is limited to preservation, quarantine, nonuse, device and account identification, neutral targeted inspection, and expedited discovery.

101. A neutral examiner, targeted criteria, segregation, restricted review, and limited reporting can protect privilege, privacy, and unrelated information.

102. Any relief should permit Defendant to remain employed by AWM or another employer and compete lawfully without Protected Information.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant as follows:

A. Temporarily, preliminarily, and permanently enjoining access, review, use, copying, transmission, disclosure, circulation, incorporation, modification, destruction, or exploitation of Protected Information, except for supervised preservation and compliance;

B. Requiring immediate preservation of relevant devices, accounts, media, electronically stored information, metadata, logs, communications, backups, and forensic artifacts, and suspension of destructive processes;

C. Requiring counsel-supervised quarantine of all identified copies, excerpts, and derivatives without deletion until preservation is complete or the Court orders otherwise;

D. Requiring verified identification of relevant devices, accounts, services, platforms, backups, storage locations, recipients, and transfer methods used from May 1 through August 31, 2026;

E. Directing neutral, targeted forensic preservation and inspection under a protocol protecting privilege and unrelated personal and third-party information;

F. Authorizing expedited interrogatories, document requests, a limited Defendant deposition, and narrowly tailored third-party subpoenas;

G. Requiring preservation of derivative work product and an accounting of commercial activity involving Protected Information;

H. Requiring return or verified deletion of Protected Information after forensic preservation and subject to further order;

I. Awarding damages, disgorgement, reasonable royalty, exemplary damages, attorneys' fees, interest, costs, and expenses only as authorized and proven;

J. Declaring that no relief prohibits lawful employment, use of general knowledge and skills, or lawful competition not involving Protected Information; and

K. Granting such other and further relief as the Court deems just and proper.

Dated: September 25, 2026
Bohemia, New York

Respectfully submitted,

**ZABELL & COLLOTTA, P.C.**
*Attorneys for Plaintiff*

By: ______________________________

Saul D. Zabell, Esq.
1 Corporate Drive, Suite 103
Bohemia, New York 11716
Tel.: (631) 589-7242
Fax: (631) 563-7475
SZabell@laborlawsny.com

# VERIFICATION

**STATE OF NEW YORK )**
**) ss.:**
**COUNTY OF SUFFOLK )**

Molly Hays, being duly sworn, deposes and says:

1. I am the Executive Vice President of Cable Management Solutions, Inc., doing business as Snake Tray, the Plaintiff in this action.
2. I have read the foregoing Verified Complaint and know its contents.
3. The allegations are true to my personal knowledge except those stated upon information and belief, and as to those allegations, I believe them to be true.
4. My personal knowledge includes matters arising from my responsibilities at Snake Tray and my review of company records.
5. Allegations concerning technical findings are based on information reported by Snake Tray's retained forensic examiner, Michael D'Angelo, and the forensic materials identified in his affidavit.
6. I do not independently opine that company-side evidence proves external transfer, personal retention, disclosure, or post-employment use.

Dated: Sept. 25, 2026
Bay Shore, New York

Molly Hays
**Molly Hays**